UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| CYRUS WADE RAMSEY, JR., | CASE NO. 06-12746-NPO |
| DEBTOR. | CHAPTER 7 |
| CYRUS WADE RAMSEY | PLAINTIFF |
| V. | ADV. PROC. NO. 07-01053-NPO |
| COUNTRYWIDE HOME LOANS, INC. | DEFENDANT |

MEMORANDUM OPINION AND ORDER
GRANTING COMPLAINT

This matter came on for trial (the "Trial") on September 9, 2009, on the Complaint Seeking Declaratory Judgment (the "Complaint")(Adv. Dkt. No. 1) filed by the Plaintiff, Cyrus Wade Ramsey, Jr. ("Wade Ramsey"), and the Answer and Affirmative Defenses (the "Answer")(Adv. Dkt. No. 14), filed by the Defendant, Countrywide Home Loans, Inc. ("Countrywide"), in the above-styled adversary proceeding (the "Adversary"). At the Trial, Robert E. Buck represented Wade Ramsey, and Harold H. Mitchell, Jr. represented Countrywide. The Court, having considered the pleadings as well as the testimony, exhibits, and arguments of counsel presented at Trial, finds that the Complaint is well-taken and should be granted as set forth herein. Specifically, the Court finds as follows:[1]

---

[1] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

Page 1 of 16

## Jurisdiction

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) and (K). Notice of the Trial was proper under the circumstances.

## Facts

**I. The following facts were stipulated by the parties in the Pretrial Order ("Pretrial Order")(Adv. Dkt. No. 88) which was approved by the Court:**

The deed of trust ("Deed of Trust")(Ex. CHL 4) at issue in this Adversary was executed by Tammy Ramsey. Western Surety Company and Rebecca Jean Long ("Rebecca Long"), the notary public who acknowledged the Deed of Trust, were dismissed as Third-Party Defendants in the third-party action filed by Countrywide by the entry of a Stipulation of Dismissal (Adv. Dkt. No. 55) on July 22, 2008.

**II. The following facts were established at Trial:**

At all times pertinent to this Adversary, Wade Ramsey worked for Tackett Fish Farms as a truck driver, earning approximately $35,000 per year. (Tr. 24, 32-33).[2] Additionally, he lived at 1206 Saffold Street, Greenwood, Leflore County, Mississippi (the "Property"), which was his homestead. (Tr. 4-5). He filed a voluntary petition (the "Petition")(Dkt. No. 1) in this Court under chapter 13 of the Bankruptcy Code on October 27, 2006. By Order of this Court (Dkt. No. 17), the case converted to a case under chapter 7 of the Bankruptcy Code on December 6, 2006. At the time he filed the Petition, he was married to Tammy Ramsey.[3] Wade Ramsey and Tammy Ramsey

---

[2] Citations to the trial transcript will be referred to as (Tr. [page number(s)]).

[3] Prior to the date of the Trial, however, Wade Ramsey obtained a second divorce from Tammy Ramsey. (Tr. 3).

acquired title to the Property on March 1, 1996, by virtue of a warranty deed which conveyed title to them as "tenants by the entirety with full rights of survivorship and not as tenants in common." (Ex. CHL 1).

### A. The Testimony of Wade Ramsey.

This case proves the old adage that love is blind. While under oath, Wade Ramsey stated that he and Tammy Ramsey were actually married to each other twice. (Tr. 36). Wade Ramsey admitted that Tammy Ramsey had a criminal record for passing bad checks which contributed to their first divorce. (Tr. 29, 36). He also admitted that during their second marriage, even though he was aware of Tammy Ramsey's criminal history, he trusted her to do all the family's banking and did not look at the bank statements. (Tr. 33-36).

In January 2001, Wade Ramsey received approximately $900,000 in net proceeds from the settlement of a personal injury claim ("Settlement Proceeds")(Tr. 15-16). Approximately $350,000 of the Settlement Proceeds was placed in certificates of deposit at Planters Bank & Trust Company. (Tr. 16, 38, 47, 53). Much of the rest of the Settlement Proceeds was spent by the Ramseys between 2001 and 2004 (Tr. 31-32). The Ramseys renovated the Property, including building an addition and adding a pool. (Tr. 31-32, 48). They also purchased a second house ("Taylor Drive House")[4] and new vehicles. (Tr. 31-32, 47-49).

Wade Ramsey testified that he received a call in August 2005, from his insurance agent who informed him that the homeowners' policy on the Property needed to be renewed to comply with the

---

[4] The purchase of the second house is reflected by a warranty deed, dated April 18, 2001. (Ex. CHL 16). According to Wade Ramsey's testimony, Tammy Ramsey let her mother live in the house without paying rent, although he did not know that at the time. (Tr. 32). Wade Ramsey and Tammy Ramsey later sold the Taylor Drive House. (Ex. CHL 18, Tr. 49).

terms of the mortgage taken on the Property in August 2004. (Tr. 17). Wade Ramsey also stated he did not know what she was talking about because any debts associated with his home were paid. Id. He further stated that to his knowledge there was no need to borrow money because he still had $350,000 in certificate of deposits in Planters Bank & Trust Company (Tr. 53).

While the signature on the note (the "Note")(Ex. CHL 2) dated August 11, 2004, memorializing a loan in the amount of $75,000, purports to be Wade Ramsey's signature, Wade Ramsey testified to the following with regard to the execution of the Note and the Deed of Trust: he did not sign the Note or the Deed of Trust; he was not present when Tammy Ramsey signed the Note and the Deed of Trust; he did not authorize anyone to sign the Note or the Deed of Trust on his behalf; he was not aware until later that Tammy Ramsey had borrowed money against the Property or executed the Note or Deed of Trust; he knew Rebecca Long because her children attended the same school his children did and she worked at a car dealership from whom he had once purchased a truck, but he had not executed any documents before her in August 2004; and, he did not know Andrew or Millie Justis, who signed the Deed of Trust as witnesses (Tr. 9-14, 56).

Wade Ramsey testified that he retained Mr. Buck to represent him and executed a Uniform Affidavit for Identity Theft pursuant to Mr. Buck's advice (Ex. P 2, Tr. 21). Wade Ramsey also testified that he never made any payments on the Note because he felt he was not responsible for the debt. (Tr. 21-22). According to the undisputed testimony of Wade Ramsey, the Property was the homestead of Wade Ramsey and Tammy Ramsey at all times pertinent to this matter. (Tr. 4, 30). The Court found the testimony of Wade Ramsey credible.

### B. The Testimony of Tammy Ramsey.

Tammy Ramsey testified by deposition[5] that Wade Ramsey signed the Deed of Trust. (Ex. CHL 23, pp. 81-82). The Court, however, found that Tammy Ramsey's testimony regarding the execution and acknowledgment of the Deed of Trust was internally inconsistent. At one point in her testimony, Tammy Ramsey stated that she had executed the Deed of Trust before a Notary at the courthouse, and Wade Ramsey had executed it before a Notary at his place of work. (Ex. CHL 23, p. 80). She later stated that both she and Wade Ramsey executed the Deed of Trust before the Notary at the car lot at the same time. (Ex. CHL 23, p. 81). She stated that she did not know the people whose names appeared as witnesses and that "these people" were not present when she executed the Deed of Trust. (Ex. CHL 23, p. 82). The Court did not find credible Tammy Ramsey's testimony that Wade Ramsey actually signed the Note and Deed of Trust.

### Issues

The issues presented to the Court are:

I.   Whether the Deed of Trust is valid as to Wade Ramsey and/or Tammy Ramsey;

II.  If the Deed of Trust is not valid, whether Countrywide is entitled to an equitable lien on the Property under the circumstances; and,

III. Whether Wade Ramsey can prevail on a motion made at the close of Trial to amend the Complaint to request attorney's fees.

---

[5] Mr. Mitchell offered as evidence excerpts from the deposition testimony of Tammy Ramsey taken in the case styled Cyrus Wade Ramsey, Individually and as Father and Next Friend of Jonathan Ramsey, Jessica Ramsey and Jean-Marie Ramsey, Minors v. Planters Bank and Trust Company, Cause No. 2006-0001-CICI, in the Circuit Court of Leflore County, Mississippi. Mr. Buck objected to the entry of the deposition testimony into evidence. The Court found that the deposition testimony of Tammy Ramsey was properly admitted under Federal Rules of Evidence 804(a) and (b)(1).

## Discussion

**I.    The Deed of Trust is invalid as to Wade Ramsey and Tammy Ramsey.**

**A.    The Deed of Trust is invalid as to Wade Ramsey.**

Federal Rule of Evidence 901(b)(3) allows the trier of fact to compare a controverted signature on an instrument to an authenticated exemplar for the purposes of authenticating the former. *See also* United States v. Garza, 448 F.3d 294, 300 (5th Cir. 2006). This Court compared the purported signatures of Wade Ramsey on the Note and Deed of Trust to the exemplar signature on the warranty deed whereby Wade Ramsey and Tammy Ramsey granted title to the Taylor Drive House to LaNita Roark. ("Taylor Drive Warranty Deed")(Ex. CHL 18).[6] It is clear to the Court that the signatures on the Note and the Deed of Trust which purport to be the signatures of Wade Ramsey are not, in fact, Wade Ramsey's. In light of this finding, coupled with the credible testimony of Wade Ramsey, the Court finds that Wade Ramsey did not sign the Note or the Deed of Trust at issue in this Adversary.

Miss. Code Ann. § 89-1-29 (1980)[7] states that a mortgage or deed of trust on a homestead shall not be valid or binding unless signed by both husband and wife if the owner of the property is married and living with the spouse unless the spouse has been declared insane.[8] In interpreting § 89-1-29, the Mississippi Supreme Court has steadfastly held that a deed of trust on a homestead,

---

[6] The Taylor Drive Warranty Deed was introduced into evidence by Countrywide.

[7] Hereinafter referred to as § 89-1-29.

[8] The statute does allow an attorney in fact to sign a deed of trust for spouse, but the attorney in fact must be designated in a power of attorney and cannot be the other spouse. In the case at bar, Wade Ramsey testified that he did not authorize anyone to sign the Deed of Trust for him. (Tr. 11-12). Additionally, no evidence regarding a power of attorney was presented to the Court.

executed by [one spouse] alone, is void. *See generally* Bollen v. R.G. Lilly & Son, 37 So. 811 (Miss. 1905); Yazoo Lumber Co. v. Clark, 48 So. 516 (Miss. 1909); Stronger v. Arrington, 32 So. 2d 879 (Miss. 1947); Travis v. Dantzler, 141 So. 2d 556 (Miss. 1962); Thornhill v. Caroline Hunt Trust Estate, 594 So. 2d 1150 (Miss. 1992); Thurman v. Thurman, 770 So. 2d 1015 (Miss. Ct. App. 2000); Alexander v. Daniel, 904 So. 2d 172 (Miss. 2005). In 1987, the Mississippi Supreme Court held in Welborn v. Lowe that, "[t]he cases are legion construing [§ 89-1-29] to mean that a conveyance of homestead without a spouse joining in the execution of the deed is *absolutely* void." Welborn, 504 So. 2d 205, 207 (Miss. 1987)(emphasis added). This result is true even if the non-signing spouse agreed to the conveyance at the time but was prevented from signing the deed because of illness. Hughes v. Hahn, 46 So. 2d 587 (Miss. 1950). It is true even when the signing spouse is also the spouse who wants to avoid the conveyance based on his spouse's failure to sign. Rhymes v. Countrywide Home Loans, Inc., 2008 WL 723975 (Bankr. S.D. Miss. 2008).

In Grantham v. Ralle, the Mississippi Supreme Court explained the history and purpose of the statute:

> It is to be noted that these homestead provisions first were listed in the Code of 1880 primarily as a protection for the wife in lieu of dower which had been abolished by statute. The basic purpose was, of course, to prevent her husband from conveying or encumbering the homestead without the consent of his wife, and the effect was to avoid any attempt to so convey the homestead.

Grantham v. Ralle, 158 So. 2d 719, 724 (Miss. 1963). Additionally, no requirement of the homestead statute [§89-1-29] can be waived by either the husband or the wife. Ward v. Ward, 517 So. 2d 571, 573 (Miss. 1987). The validity of the instrument is determined by the circumstances existing at the time of its execution. Craddock v. Brinkley, 671 So. 2d 662, 665 (Miss. 1996)(citing Hughes, 46 So. 2d at 588). Furthermore, no subsequent action on the part of the non-joining spouse can cure the invalidity of the original instrument. Id.

Recently, in a relevant case with a similar factual scenario and also involving Countrywide, the Supreme Court of Mississippi held that "[§ 89-1-29] is a clear, unambiguous statute. Thus, we must apply its plain meaning." Countrywide Home Loans, Inc. v. Parker, 975 So. 2d 233, 234 (Miss. 2008).[9] As noted above, the Court has found that Wade Ramsey did not sign the Note or the Deed of Trust. Under the plain meaning of the statute, therefore, the Deed of Trust is invalid and unenforceable because the statutory requirement that both spouses sign a deed of trust on homestead property was not met.

### B.    The Deed of Trust is invalid as to Tammy Ramsey.

Countrywide alternatively asserted that the Deed of Trust should be enforced as to Tammy Ramsey's undivided interest in the Property based upon Shepherd v. Shepherd, 336 So. 2d 497 (Miss. 1976), and Mississippi Code Annotated sections 11-21-3, 11-25-5, and 11-21-39. In Shepherd, the Mississippi Supreme Court determined that the dissolution of a marriage did not terminate the joint tenancy of the husband and wife. Id. Section 11-21-3 states: "Land held by joint tenants may be partitioned." Section 11-25-5 states: "Any of the parties in interest may institute proceedings for partition of lands or for a partition sale thereof." Finally, § 11-21-39 states:

> Any mortgage or other lien executed by any joint tenant, tenant in common, or coparcerner, shall remain in force on the share of such cotenant after partition, and on his share only; but this shall not prevent the holder of such mortgage of other lien from asserting claim to owelty awarded to such cotenant.

Countrywide's argument is misplaced since Mississippi case law is clear. The Mississippi Supreme Court held in Ward that, any conveyance of a homestead without the joinder of both spouses is null and void *as to both spouses*. Ward, 517 So. 2d at 572 (emphasis added).

---

[9]This case was not cited by Countrywide in any of its pleadings. For further discussion of Countrywide v. Parker, see pp. 13-14 herein.

Furthermore, in Welborn, the Mississippi Supreme Court specifically rejected a request to adopt the Texas view that "a deed conveying homestead property [in which one spouse did not join] is operative against [the] person who sign[ed] it." Welborn, 504 So. 2d at 208. While the Appellant in Welborn argued that the "Texas interpretation fulfill[ed] every conceivable purpose for which the legislature could have intended in enacting the homestead statue," the Welborn court did not agree and declined to change the established law in Mississippi. Id.

### II. Under Mississippi law, Countrywide is not entitled to an equitable lien on the Property.

Countrywide asserts that Wade Ramsey should be estopped from enjoying the benefits of the alleged fraud of Tammy Ramsey, and that Countrywide should be granted an equitable lien on the Property. Countrywide cites the following cases to support its position: Hamblet v. Harrison, 31 So. 580 (Miss. 1902)(citing Robinson v. Lewis, 8 So. 258 (Miss. 1890)); Strauss Bros. v. Denton, 106 So. 257 (Miss. 1925); Walker v. Woods, 148 So. 354 (Miss. 1933); Kelso v. Robinson, 161 So. 135 (Miss. 1935); Dudley v. Light, 586 So. 2d 155 (Miss. 1991); and Nichols v. Bush, 913 So. 2d 387 (Miss. App. 2005). None of the cases cited by Countrywide, however, were governed by § 89-1-29 or its precursors and are, therefore, distinguishable.

Hamblet does stand for the principle that "neither [spouse] can enjoy the fruits of the fraud of the other, nor strengthen the rotten claim. . . ." Hamblet, 31 So. at 581 (citing Robinson v. Lewis, 8 So. 258 (Miss. 1890). The Hamblet case, however, involved a single person's fraudulent acquisition of title, his later marriage, and then his subsequent conveyance of his purported title to his wife. Thus, the fact scenario in the Hamblet case dealt with the fraudulent acquisition of title and simply was not governed by § 89-1-29. Additionally, there is no question in the case at bar that

Wade Ramsey and Tammy Ramsey had legal title to the Property at the time Tammy Ramsey executed the Deed of Trust. Countrywide's reliance in Hamblet, therefore, is misplaced.

The Walker case cites Hamblet and, in an estate situation, held that when one spouse is disqualified from purchasing certain property because to do so would violate his duties as executor, then his spouse is also disqualified. Walker, 148 So. at 355. Like Hamblet, the Walker case was not governed by § 89-1-29. Countrywide's reliance on Walker, therefore, is misplaced as well.

In the Strauss Bros. case, the Mississippi Supreme Court held that one defendant was estopped by his own prior silence to deny the genuineness of a guaranty forged by the other defendant after it was relied on by the plaintiff. Strauss Bros., 106 So. at 258. Strauss Bros., however, is distinguishable. In that case, the defendant knew that his guaranty had been forged before the plaintiff relied on it and lent the money. Id. Under the facts of that case, the Mississippi Supreme Court held,

> As a rule, mere silence will not work an estoppel, but it may operate as such against a party where the circumstances are such as to make it his duty to speak and there is an opportunity to speak, and where he has knowledge of the facts, including the facts that the adverse party is ignorant of the truth and will be misled in doing that which he would not do but for such silence.

Id.

In the case at bar, however, the evidence demonstrated that Wade Ramsey did not have knowledge of the Note or Deed of Trust prior to its execution by Tammy Ramsey and whomever forged his signature. Wade Ramsey, therefore, had no opportunity to prevent Countrywide from being defrauded by Tammy Ramsey. Under the facts of this case, Wade Ramsey's silence prior to the execution of the Note and Deed of Trust was a result of his lack of knowledge, and, therefore, falls under the general rule that silence does not work an estoppel.

Countrywide's argument that Wade Ramsey's silence after the execution of the Note and Deed of Trust works as an estoppel also is unfounded. The evidence showed that Wade Ramsey did nothing to lead Countrywide to believe that he accepted responsibility for the debt. The evidence established that Wade Ramsey denied responsibility for the debt in the communication he had with Countrywide after his discovery of the existence of the forged Note and Deed of Trust. (Ex. P1; Tr 19-22). Furthermore, like the other cases cited by Countrywide, the Strauss Bros. case was not governed by § 89-1-29, while the facts in the case at bar are.

Kelso and Nichols also stand for the proposition that "[e]stoppel may arise from misleading silence or passive conduct joined with a duty to speak." Kelso, 161 So. at 137; Nichols, 913 So. 2d at 391. Kelso and Nichols are distinguishable for the same reasons Strauss Bros. is distinguishable. Accordingly, the Court does not find Countrywide's reliance on Kelso and Nichols persuasive.

Dudley v. Light is the only Mississippi case cited by Countrywide in which a court imposed an equitable lien on a homestead. Dudley, 586 So. 2d 155. Dudley, however, is distinguishable from the case at bar. In Dudley, the Mississippi Supreme Court affirmed the chancellor's decision to grant an equitable lien to the wife's mother, where she had lent the husband and wife money to save their house from foreclosure prior to the couple filing for divorce. Id. at 158-59. Dudley did not involve the execution of a deed of trust affecting a homestead by only one spouse. Therefore, Dudley was not governed by § 89-1-29, and is, therefore, not applicable.

Countrywide also relies on Rothschild v. Title Guarantee and Trust Co., 97 N.E. 879 (N.Y. 1912) for the proposition that a forged mortgage, although initially void, may become valid if the mortgagor subsequently recognizes it as a valid lien, as for example, by making payments on it. While that may be the law in New York, it is not the law in Mississippi. In Mississippi, the validity

of the instrument is determined by the circumstances existing at the time of its execution. Craddock, 671 So. 2d at 665. No subsequent action on the part of the non-joining spouse can cure the invalidity of the original instrument. Id.

Countrywide asserts that the doctrine of laches prevents Wade Ramsey from repudiating the Deed of Trust because he waited almost three years to allege fraud on the part of Tammy Marie Ramsey. (Adv. Dkt. No. 14). As to the factual assertion, Wade Ramsey testified that he made Countrywide aware of Tammy Ramsey's fraud after he found out about it. (Tr. 18-20). The documentary evidence demonstrates that Countrywide knew that Wade Ramsey alleged the Deed of Trust was a fraud at the latest by May 16, 2006. (Ex. P1).

Regardless of how soon Wade Ramsey alerted Countrywide to Tammy Ramsey's fraud, however, Countrywide's application of the doctrine of laches is without merit. "The validity of the deed of trust is judged by the circumstances existing at the time of its execution." Craddock, 671 So. 2d at 665 (citing Hughes v. Hahn, 46 So. 2d 587 (Miss. 1951)). The Deed of Trust was not signed by Wade Ramsey at its execution as required by § 89-1-29; therefore, it is void. "Subsequent actions by the spouse who failed to join in the execution cannot cure the invalidity of the instrument." Id. (citing Welborn, 504 So. 2d at 206). Therefore, any period of silence on the part of Wade Ramsey after Tammy Ramsey's forgery cannot make legitimate the Deed of Trust that was null and void from the beginning.

Countrywide also pled relinquishment and waiver on the part of Wade Ramsey, arguing that he failed timely to "allege fraud on the part of Tammy Marie Ramsey and did not assert that he was not liable on the indebtedness evidenced by the Deed of Trust." (Adv. Dkt. No. 14, p. 2). These asserted defenses cannot overcome the strict requirements of § 89-1-29. The statutory requirements

of § 89-1-29 cannot be relinquished or waived: "There can be no operative conveyance or effectual release of the exemption unless the method pointed out by the statute is pursued with strictness and *no requirement of the statute may be waived* by the husband and wife or by either of them." Ward, 517 So. 2d at 573 (emphasis added). Therefore, pursuant to Mississippi case law, Wade Ramsey could not relinquish or waive the protection offered to spouses under § 89-1-29.

Countrywide has cited no case controlled by § 89-1-29, in which a Mississippi court has imposed an equitable lien when faced with a deed of trust on homestead property which was signed by only one spouse. Likewise, this Court's research has found no such case. On the contrary, the Mississippi Supreme Court recently rejected Countrywide's request for an equitable lien in Countrywide v. Parker. Parker, 975 So. 2d at 233.

In the Parker case, Julius Parker moved into Dorothy Parker's house in Pike County when they got married in 1990. Id. When Dorothy refinanced her home in 2000, Dorothy executed a deed of trust in favor of Nationscredit Financial Services. Id. Julius did not sign that deed of trust. Id. In 2004, Dorothy refinanced again and executed a second deed of trust in favor of WMC Mortgage Company, which in turn assigned its interest to Countrywide. Id. at 234. Julius Parker did not sign the second deed of trust either. Id. Dorothy died in 2005, and Julius filed suit to declare the second deed of trust null and void because he had not signed it. Id. At trial, the evidence showed that Dorothy had lied on her loan application when she stated that she was separated from her husband. Id. The evidence also showed that Julius and Dorothy were never separated but lived together during their entire marriage until Dorothy's death. Id. The Pike County chancellor declared the second deed of trust null and void and refused to impose an equitable lien in favor of Countrywide. Id. The Mississippi Supreme Court affirmed the chancellor's decision, stating,

> When we apply, as we must, the plain language of Mississippi Code Section 89-1-28 to the facts of this case, we must hold that the deed of trust is invalid and unenforceable. Further, this Court does not have the authority to issue an equitable lien under the facts of this case.

Id. at 234-35.

Of the Mississippi cases construing § 89-1-29, the Parker case is most closely analogous to the case at bar. In each case, a deed of trust on homestead property was signed by one spouse and not the other. In each case, the signing spouse actively deceived Countrywide. In Parker, Dorothy lied on her application so as to mislead Countrywide into thinking that her spouse had no homestead interest in the property. The Mississippi Supreme Court held in Parker it had no authority to impose an equitable lien in favor of Countrywide. In the case at bar, Tammy Ramsey forged or caused Wade Ramsey's signature to be forged on the Note and Deed of Trust so as to mislead Countrywide into believing that Wade Ramsey was a knowing participant in the loan transaction. This Court declines to impose an equitable lien in a situation governed by § 89-1-29, when it appears that the Mississippi Supreme Court has never done so.

### III. Wade Ramsey may not prevail on a motion made at the close of Trial to amend the Complaint to request attorney's fees.

Federal Rule of Bankruptcy Procedure 7008(b) states that "[a] request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-party complaint, answer, or reply as may be appropriate." It is insufficient to request attorney's fees in the prayer for relief. Id.; *see also* In re DeMaio, 158 B.R. 890 (Bankr. D. Conn. 1993).

Federal Rule of Bankruptcy Procedure 7015 governs amendments to pleadings in bankruptcy court by applying Federal Rule of Civil Procedure 15 to adversary proceedings. While Fed. R. Civ. P. 15(a) generally allows for liberal amendments before trial, Fed. R. Civ. P. 15(b) limits the

circumstances in which a party may amend its pleadings during or after trial. Fed. R. Bankr. P. 15(b)(1) allows a court to permit a party to amend its pleadings if a party has objected at trial that evidence is not within the issues raised in the pleadings. The rule states that "[t]he court shall freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Fed. R. Bankr. P. 15(b)(1). Fed. R. Bankr. P. 15(b)(2) states that "when an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."

In the present case, Wade Ramsey requested attorney's fees in his closing argument at Trial. Wade Ramsey moved the Court for leave to amend his pleadings to raise attorney's fees as a claim after the Court pointed out the requirements of Fed. R. Bankr. P. 7008. Countrywide objected to the *ore tenus* motion for leave to amend complaint to request attorney's fees (the "*Ore Tenus* Motion"). Wade Ramsey's situation does not fall within either scenario described in Fed. R. Bankr. P. 7015(b)(1) or (2). Accordingly, the *Ore Tenus* Motion is not well-taken and should be denied.

## Conclusion

Based on its examination of the exhibits introduced into evidence at Trial and on the credible testimony of Wade Ramsey, this Court finds that the purported signatures of Wade Ramsey on the Note and Deed of Trust are forgeries. Since the Deed of Trust purports to convey an interest in the homestead of Wade Ramsey without his signature, this case is governed by § 89-1-29. Pursuant to § 89-1-29 and Mississippi case law cited herein, the Court holds that the Deed of Trust is invalid as to both Wade Ramsey and Tammy Ramsey, and Countrywide is not entitled to an equitable lien on the Property under the circumstances. Accordingly, the Court finds that the Complaint is well-taken

and should be granted as follows:

    A.    Wade Ramsey is granted a judgment affirmatively declaring the purported mortgage lien of Countrywide against the Property to be null and void, and, therefore, unenforceable;

    B.    Countrywide is permanently enjoined from asserting a lien on the Property based on the Note and Deed of Trust at issue in this case;

    C.    Countrywide is permanently enjoined from asserting an equitable lien on the Property; and,

    D.    Within thirty (30) days of the date of this Memorandum Opinion and Order, Countrywide shall take all steps necessary to cancel any and all documents which create a cloud on title to the Property.

Based on the Federal Rules of Bankruptcy Procedure 7008 and 7015, the Court finds that the *Ore Tenus* Motion is not well-taken and should be denied.

A separate final judgment consistent with this Memorandum Opinion and Order will be entered by this Court in accordance with Bankruptcy Rules 7054 and 9021.

IT IS, THEREFORE, ORDERED, that the Complaint hereby is granted as set forth herein.

IT IS FURTHER ORDERED that the *Ore Tenus* Motion hereby is denied.

SO ORDERED.

*/s/ Neil P. Olack*
Neil P. Olack
United States Bankruptcy Judge
Dated: October 30, 2009

*/s/ Neil P. Olack*
Neil P. Olack
United States Bankruptcy Judge

Page 16 of 16